UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NICOLAS GONZALEZ,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>Defendant. | No. 14 C 5635<br><br>Magistrate Judge Mary M. Rowland |

# MEMORANDUM OPINION AND ORDER

Plaintiff Nicolas Gonzalez filed this action seeking reversal of the final decision of the Commissioner of Social Security denying his application for Disability Insurance Benefits under Title II of the Social Security Act (Act). 42 U.S.C. §§ 405(g), 423 et seq., 1381 et seq. The parties have consented to the jurisdiction of the United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c), and filed cross motions for summary judgment. For the reasons stated below, the case is remanded for further proceedings consistent with this Opinion.

## I. THE SEQUENTIAL EVALUATION PROCESS

To recover Disability Insurance Benefits (DIB), a claimant must establish that he or she is disabled within the meaning of the Act.[1] *York v. Massanari*, 155 F.

---

[1] The regulations governing the determination of disability for DIB are found at 20 C.F.R. § 404.1501 et seq. Regulations governing Supplemental Security Income (SSI) are set forth at 20 C.F.R. § 416.901 et seq. The standards for determining disability under DIB and SSI are virtually identical. Craft v. Astrue, 539 F.3d 668, 674 n.6 (7th Cir. 2008) ("Although the Code of Federal Regulations contains separate sections for DIB and SSI, the pro-

Supp. 2d 973, 978 (N.D. Ill. 2001). A person is disabled if he or she is unable to perform "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). In determining whether a claimant suffers from a disability, the Commissioner conducts a standard five-step inquiry:

1. Is the claimant presently unemployed?
2. Does the claimant have a severe medically determinable physical or mental impairment that interferes with basic work-related activities and is expected to last at least 12 months?
3. Does the impairment meet or equal one of a list of specific impairments enumerated in the regulations?
4. Is the claimant unable to perform his or her former occupation?
5. Is the claimant unable to perform any other work?

20 C.F.R. §§ 404.1509, 404.1520; *see Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, stops the inquiry and leads to a determination that a claimant is not disabled." *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985). "The burden of proof is on the claimant through step four; only at step five does the burden shift to the Commissioner." *Clifford*, 227 F.3d at 868.

---

cesses of evaluation are identical in all respects relevant to this case."). Accordingly, this Court cites to both DIB and SSI cases.

## II. PROCEDURAL HISTORY

Plaintiff applied for DIB on March 13, 2012, alleging that he became disabled on December 22, 2011, due to shortness of breath and chronic fatigue. (R. at 104, 135). The application was denied initially and upon reconsideration, after which Plaintiff filed a timely request for a hearing. (*Id.* at 50, 58, 64). Plaintiff, represented by counsel, appeared and testified at a hearing before an Administrative Law Judge (ALJ) on April 12, 2013. (*Id.* at 24–42). The ALJ also heard testimony from Pamela Tucker, a vocational expert (VE). (*Id.*).

The ALJ denied Plaintiff's request for benefits on April 26, 2013. (R. at 12–20). Applying the five-step sequential evaluation process, the ALJ found, at step one, that Plaintiff has not engaged in substantial gainful activity since December 22, 2011, the alleged onset date. (*Id.* at 14). At step two, the ALJ found that Plaintiff's asthma, lumbar scoliosis, and lumbar spurs are severe impairments. (*Id.*). At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of any of the listings enumerated in the regulations. (*Id.* at 16).

The ALJ then assessed Plaintiff's residual functional capacity (RFC)[2] and determined that he can perform medium work except "[Plaintiff] would have the ability to perform frequent climbing, stooping and crawling. he may have no more than occasional concentrated exposure to extreme cold, heat or humidity. [Plaintiff] may

---

2 Before proceeding from step three to step four, the ALJ assesses a claimant's residual functional capacity. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The RFC is the maximum that a claimant can still do despite his mental and physical limitations." Craft, 539 F.3d at 675–76.

also have to more than occasional exposure to concentrated levels of fumes, odors, dust gasses or poor ventilation." (R. at 16). Based on Plaintiff's RFC and the VE's testimony, the ALJ determined at step four that Plaintiff is unable to perform any past relevant work. (*Id.* at 18). Based on Plaintiff's RFC, age, education, and the VE's testimony, the ALJ determined at step five that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including packager, machine feeder, and motor vehicle assembler. (*Id.* at 19). Accordingly, the ALJ concluded that Plaintiff was not suffering from a disability, as defined by the Act. (*Id.* at 19–20).

The Appeals Council denied Plaintiff's request for review on June 24, 2014. (R. at 1–5). Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. *Villano v. Astrue*, 556 F.3d 558, 561–62 (7th Cir. 2009).

### III. STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is authorized by § 405(g) of the Act. In reviewing this decision, the Court may not engage in its own analysis of whether the plaintiff is severely impaired as defined by the Social Security Regulations. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Nor may it "reweigh evidence, resolve conflicts in the record . . . or, in general, substitute [its] own judgment for that of the Commissioner." *Id.* The Court's task is "limited to determining whether the ALJ's factual findings are supported by substantial evidence." *Id.* (citing § 405(g)). Evidence is considered substantial "if a reasonable person would ac-

cept it as adequate to support a conclusion." *Indoranto v. Barnhart*, 374 F.3d 470, 473 (7th Cir. 2004); *see Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014) ("We will uphold the ALJ's decision if it is supported by substantial evidence, that is, such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (citation omitted). "Substantial evidence must be more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). "In addition to relying on substantial evidence, the ALJ must also explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005).

Although this Court accords great deference to the ALJ's determination, it "must do more than merely rubber stamp the ALJ's decision." *Scott v. Barnhart,* 297 F.3d 589, 593 (7th Cir. 2002) (citation omitted). "This deferential standard of review is weighted in favor of upholding the ALJ's decision, but it does not mean that we scour the record for supportive evidence or rack our brains for reasons to uphold the ALJ's decision. Rather, the ALJ must identify the relevant evidence and build a 'logical bridge' between that evidence and the ultimate determination." *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014). Where the Commissioner's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele v. Barnhart,* 290 F.3d 936, 940 (7th Cir. 2002).

## IV. RELEVANT MEDICAL EVIDENCE

Plaintiff, who does not speak English, performed heavy work for over 33 years as a dock worker/material handler at a metal polishing company. (R. at 37–39, 136). He claims disability as of December 22, 2011, when he stopped working.

From April 2009 through February 2012, Plaintiff had quarterly appointments with physician Shishir Jain, M.D., primarily for the purpose of following up about his asthma. (R. at 174–217, 233–251.) In April 2009, Plaintiff reported that his symptoms were rare and did not limit his activity. (*Id.* at 174). His prescriptions were a daily allergy/asthma pill called Singulair and an Advair Diskus inhaler. Dr. Jain then rated Plaintiff's asthma as "mild persistent under control." In a follow-up visit in July 2009, Dr. Jain noted that his symptoms were "well-controlled with Advair only, and his asthma was rated as "intermittent." (*Id.* at 177–78). In October 2009, the doctor rated his asthma as "mild persistent." (*Id.* at 180).

At a comprehensive physical exam on January 21, 2010, Plaintiff reported that his shortness of breath and wheezing had increased to every few days, and he had a cough productive of yellow mucus. (R. at 181). A spirometer test indicated normal lung function. (*Id.* at 217). A musculoskeletal exam revealed no abnormalities. (*Id.* at 182–83). In April 2010, he was having no asthma symptoms but still had a cough and was sneezing, particularly in the prior two weeks. (*Id.* at 186). In July 2010, he was experiencing no asthma symptoms and was coughing rarely. (*Id.* at 189). In October 2010, Plaintiff's shortness of breath and wheezing were rare, he was coughing weekly or less, and he continued to use his medications, usually as prescribed. (*Id.*

at 192). He continued to report that asthma was not limiting his activities, and his lungs sounded clear to auscultation and percussion. (*Id.*). In January 2011, all asthma symptoms were "rare." (*Id.* at 194). In May and again in September 2011, the last two visits before his alleged onset date, he reported that he experienced shortness of breath or wheezing "monthly or less" and a cough "weekly or less." (*Id.* at 197, 199). His lungs continued to sound clear on exam. (*Id.* at 194, 197, 199).

On December 28, 2011, Plaintiff reported to Tamika Hobson, P.A., that, for the first time in his life, he was experiencing daily nervousness and insomnia due to getting laid off from his job and getting denied for disability.[3] (R. at 201). Hobson diagnosed an anxiety disorder, gave Plaintiff a ten day prescription for Xanax, and recommended a consultation with a psychologist. (*Id.* at 202). There is no record of any such consultation. Hobson also noted that Plaintiff's lung sounds were clear, and a musculoskeletal exam was normal, including ranges of motion. (*Id.* at 202–203).

In February 2012, Plaintiff reported to Dr. Jain that his asthma symptoms were well controlled with medications. (R. at 203). His lung sounds were clear and his asthma severity was again assessed as "mild persistent." (*Id.*). Plaintiff was having trouble falling asleep and was "upset" because he recently lost his job. (*Id.*). Dr. Jain prescribed no anxiety medication, instead counseling Plaintiff about stress management techniques and lifestyle habits conducive to good sleep. (*Id.* at 204).

---

3 This was apparently a work-related disability program unrelated to Social Security.

7

On May 14, 2012, a disability adjudicator, noting Plaintiff's earlier diagnosis of anxiety, called Plaintiff's then-attorney to inquire whether Plaintiff was suffering a mental impairment. (R. at 153). With the attorney's permission, the adjudicator then called Plaintiff, who denied having any disabling mental impairment, claiming only that he had asthma. (*Id.*).

State examining consultant Charles Kenney, M.D., reviewed Plaintiff's September 2011–February 2012 medical records and completed a Physical Residual Functional Capacity Form on May 14, 2012. (R. at 253–60). Dr. Kenney noted that Plaintiff has mild persistent asthma but has not been diagnosed with chronic fatigue. There was no medical source statement on file at the time of Dr. Kenney's report. (*Id.* at 259–60). Based on Dr. Jain's reports that Plaintiff's lungs have been clear on exam and his asthma symptoms infrequent, Dr. Kenney opined that Plaintiff can occasionally lift 50 and frequently lift 25 pounds, can stand or walk for about six hours in an eight-hour workday, and can sit for about six hours in an eight-hour workday. (*Id.* at 254). He can frequently but not constantly climb, balance, kneel, or crawl, and has no other postural limitations. (*Id.* at 255). To prevent exacerbation of his asthma, Plaintiff should avoid concentrated exposure to extreme temperatures, humidity, respiratory irritants, and hazards. (*Id.* at 257). On August 12, 2012, another reviewing consultant, C.A. Gotway, M.D., reviewed the same evidence and affirmed Dr. Kenney's assessment. (*Id.* at 261–63).

Plaintiff visited Rafiq Muhammed, M.D., for the first time on June 25, 2012, explaining that he needed primary care. (R. at 282). He complained of lower back

pain, stress, and poor sleep. (*Id.*). An X-ray of Plaintiff's lumbar spine taken four days later revealed mild scoliosis of the lumbar spine and two small thin spurs noted at the second and fifth lumbar vertebrae. (*Id.*). Dr. Muhammed prescribed Tramadol (a pain reliever) and amitriptyline (an antidepressant) in addition to Plaintiff's ongoing asthma medications. (*Id.* at 283–84). When Plaintiff returned for a routine follow-up visit on September 14, 2012, Dr. Muhammed rated Plaintiff's asthma as "stable" and his low back pain as "mildly improved." (*Id.* at 286, 289).

On October 30, 2012, Patrice Solomon, Ph.D., reviewed the available information about Plaintiff's mental status and opined that any mental condition appears nonsevere. (R. at 266). She indicated that Plaintiff has a nonspecified anxiety disorder that causes only mild difficulties in his social functioning and in his ability to maintain concentration, persistence, and pace. (*Id.* at 271, 275).

On February 8, 2013, Dr. Muhammed filled out a Medical Questionnaire in which he averred that he had been treating Plaintiff since April 2012 for conditions including asthma and moderate low back pain. (R. at 297). He described Plaintiff's symptoms as pain in lower back radiating to his right lower extremity, and opined that as a result Plaintiff has difficulty bending, twisting, and lifting heavy objects. (*Id.*). He described Plaintiff's prognosis as "fair," but opined that Plaintiff is unable to sustain a full-time job due to moderate pain. (*Id.* at 298).

At his hearing before the ALJ on April 12, 2013, Plaintiff testified that his asthma and back problems keep him from working. (R. at 24, 28). He was let go from his job because he was making mistakes due to the asthma. (*Id.* at 28). He was irritated

9

by fumes from nitric acid that was used about fifteen feet from where he worked. (*Id.* at 33). At home, he mows the lawn with a power push mower, but does not shovel snow or rake leaves. (*Id.* at 29). Other than that, he does only a small amount of housework. (*Id.*) He sometimes goes to church with his wife, where they typically park in a handicapped parking spot using her placard. (*Id.* at 31). On occasion, when the weather is very hot and he has not gotten a parking spot close to church, he has had difficulty walking to the building. (*Id.* at 31–32). He uses an inhaler in emergencies, particularly if he has to walk a long distance in hot weather or when there is an odor that affects is breathing. (*Id.* at 33). His medication helps him very much. (*Id.* at 34). He estimated that he can lift between 18 and 20 pounds, can sit for one hour, can stand for 45 minutes if he remains in motion, and can walk for four blocks slowly. (*Id.*). Since he stopped working, his energy level has declined and he requires medicine to sleep. (*Id.* at 36).

## V. DISCUSSION

Plaintiff contends that the ALJ's conclusion rests on two reversible errors: (1) substantial evidence did not support the ALJ's assessment of Plaintiff's residual functional capacity (RFC); and (2) the ALJ erred in evaluating the credibility of Plaintiff's own statements about his symptoms.

### A. The ALJ's RFC Assessment is Not Supported by Substantial Evidence

Plaintiff raises numerous challenges to the RFC assessment, asserting first that "the decision is rooted in" the ALJ's failure to properly consider the opinion of Plaintiff's treating physician, Dr. Muhammed. (Dkt. 14 at 8). The Court agrees that the

10

ALJ's consideration of the opinion evidence is flawed, and that she has therefore failed to provide substantial support for her RFC assessment.

Social Security regulations require the ALJ to evaluate every medical opinion received. 20 C.F.R. § 404.1527(c); *see Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013). An opinion from a treating physician is afforded controlling weight if it is both "well-supported" by clinical and diagnostic evidence and "not inconsistent with the other substantial evidence" in the case record. 20 C.F.R. § 404.1527(c)(2); *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011); *see Loveless v. Colvin,* 810 F.3d 502, 507 (7th Cir. 2016). Because of a treating doctor's "greater familiarity with the claimant's condition and circumstances," *Gudgel v. Barnhart,* 345 F.3d 467, 470 (7th Cir. 2003), an ALJ must "offer good reasons for discounting a treating physician's opinion," *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010) (citations omitted); *see also Stage v. Colvin*, 812 F.3d 1121 (7th Cir. 2016). Those reasons must be "supported by substantial evidence in the record." *Gudgel,* 345 F.3d at 470. Where no treating physician's opinion is given controlling weight, the ALJ must weigh all medical opinions considering such factors as "the length, nature, extent of the treatment relationship; frequency of examination; [each] physician's specialty, the type of tests performed, and the consistency and supportability of [each] opinion." *Scott,* 647 F.3d at 740; *Books v. Chater,* 91 F.3d 972, 979 (1996). The ALJ must then provide a "sound explanation" for the weight given each opinion. *Punzio v. Astrue,* 630 F.3d 704, 710 (7th Cir. 2011).

Here, the ALJ found Dr. Muhammed's opinion "less persuasive" in part because no medical evidence has shown abnormal exam findings of the lumbar spine. (R. at 18). The ALJ did not explain why she omitted the evidence of Plaintiff's scoliosis and bone spurs from this analysis. Earlier in her opinion, while she referenced Plaintiff's mild scoliosis and rejected Dr. Muhammed's characterization of Plaintiff's pain as "moderate," she did not refer to the lumbar spurs which were evident on the same X-ray. (Id. at 17.) The ALJ mentions neither X-ray finding in asserting that medical evidence fails to support Dr. Muhammed's opinion.

Additionally, the Court notes that there are three other doctors' opinions in the file, those of Dr. Kenney, Dr. Gotway, and Dr. Solomon. (R. at 253–63, 266–75). However, because the ALJ failed to mention those in her opinion, the Court is unable to trace the path of her reasoning in evaluating Plaintiff's combined impairments. This leaves the Court unable to meaningfully review Plaintiff's other various allegations of error in the ALJ's RFC assessment. *See Scott,* 297 F.3d at 595; *Steele,* 290 F.3d at 940. For example, in assessing Plaintiff's mental RFC, the ALJ may have relied heavily on the Mental RFC Form completed by Dr. Solomon; however, the Court cannot discern this, given that opinion's absence from her explanation. The same is true for the assessment of Plaintiff's asthma performed by Dr. Kenney and Dr. Gotway. Because the Court cannot reweigh the evidence and perform this assessment on the Commissioner's behalf, this matter must be remanded. *Young*, 362 F.3d at 1001.

Because the ALJ failed to "build an accurate and logical bridge" from the available evidence to her conclusion that Plaintiff is not disabled, the decision is not supported by substantial evidence. *Steele v. Barnhart,* 290 F.3d at 941. On remand, the ALJ shall explain the weight afforded to each medical opinion in the file. With respect to Dr. Mohammed's assessments, if "good reasons" are supplied for not giving the opinion controlling weight, *see Campbell,* 627 F.3d at 306, the ALJ shall then "consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion," *Moss v. Astrue,* 555 F.3d 556, 561 (7th Cir. 2009), in determining what weight to give the opinion.

**B. The ALJ Should Re-evaluate Plaintiff's Subjective Symptoms in Light of SSR 16-3p**

Plaintiff contends that the ALJ erred in not fully crediting his allegations regarding the extent of his impairments. The regulations describe a two-step process for evaluating a claimant's own description of his or her impairments. First, the ALJ considers "whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms, such as pain." Social Security Ruling (SSR) 16-3p,[4] at *2; *see also* 20

---

[4] SSRs "are interpretive rules intended to offer guidance to agency adjudicators. While they do not have the force of law or properly promulgated notice and comment regulations, the agency makes SSRs binding on all components of the Social Security Administration." Nelson v. Apfel, 210 F.3d 799, 803 (7th Cir. 2000); see 20 C.F.R. § 402.35(b)(1). While the Court is "not invariably bound by an agency's policy statements," the Court "generally defer[s] to an agency's interpretations of the legal regime it is charged with administrating." Liskowitz v. Astrue, 559 F.3d 736, 744 (7th Cir. 2009).

With the recent issuance of SSR 16-3p, the Social Security administration has updated its guidance on evaluating symptoms in disability claims, eliminating the term "credibility"

C.F.R. § 404.1529. Second, once an underlying impairment capable of producing Plaintiff's symptoms is established, the ALJ evaluates "the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities" SSR 16-3p, at *2. In evaluating a claimant's symptoms, "an ALJ must consider several factors, including the claimant's daily activities, [his] level of pain or symptoms, aggravating factors, medication, treatment, and limitations, and justify the finding with specific reasons." *Villano*, 556 F.3d 558, 562 (7th Cir. 2009) (citations omitted); *see* 20 C.F.R. § 404.1529(c); SSR 16-3p. An ALJ may not discredit a claimant's testimony about his symptoms "solely because there is no objective medical evidence supporting it." *Villano*, 556 F.3d at 562 (citing 20 C.F.R. § 404.1529(c)(2)). Instead, both SSR 16-3p and its predecessor SSR 96-7p require the ALJ to consider "the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and other relevant evidence in the case record." *Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir. 2007) (citation omitted).

---

from its sub-regulatory policies to "clarify that subjective symptom evaluation is not an examination of the individual's character. SSR 16-3p, 2016 WL 1119029 at *1 (effective March 16, 2016). While the new policy statement does apply to matters on appeal, the Court is also bound by case law concerning the same regulatory process under the "credibility" analysis of the former SSR 96-7p. See Hagberg v. Colvin, No. 14 C 887, 2016 WL 1660493, at *6–8 (N.D. Ill. Apr. 27, 2016); Pietruszynski v. Colvin, No. 14 C 2148, 2016 WL 1535158, at *6 & n.6 (N.D. Ill. Apr. 14, 2016).

The Court will uphold an ALJ's evaluation of symptoms if the ALJ gives specific reasons for that finding, supported by substantial evidence. *Moss*, 555 F.3d at 561. "Without an adequate explanation, neither the applicant nor subsequent reviewers will have a fair sense of how the applicant's testimony is weighed." *Steele*, 290 F.3d at 940. On remand, after a proper consideration of the opinion evidence as described above, the ALJ should take care to reevaluate Plaintiff's remaining subjective complaints in accordance with SSR 16-3p.

## VI. CONCLUSION

For the reasons stated above, Plaintiff's Motion for Summary Judgment [13] is **GRANTED** and Defendant's Motion for Summary Judgment [18] is **DENIED**. Pursuant to sentence four of 42 U.S.C. § 405, the ALJ's decision is reversed, and the case is remanded to the Commissioner for further proceedings consistent with this opinion.

E N T E R:

Dated: June 10, 2016

*[signature: Mary M Rowland]*

MARY M. ROWLAND
United States Magistrate Judge

15